## IN RE SPITTELER.

### PATENTS; AMENDMENTS; DIVISION.

Where an applicant, in conforming to a ruling of the Patent Office that a product as well as a process was claimed by him, amended his · application so as to limit his claims to the process, and a patent was issued on such amended application, a subsequent application for the product, although claimed to be a division of the original application, does not relate back to the filing date of that application; and, therefore, the issuance of a British patent to the applicant, and its publication two years before the date of the second application, on an application filed while the first application here was pending, will preclude

the grant of a patent on the second application. (Citing Re Wagner, 22 App. D. C. 267, and distinguishing *Duryea* v. *Rice*, 28 App. D. C. 423, and *Lotz* v. *Kenney, ante,* 205.) Under such circumstances the issue of a patent on the original application is not action on the case, within the meaning of sec. 4894, U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 3384, so as to entitle the applicant to one year from that time to further prosecute his application.

No. 484.	Patent Appeals. Submitted March 20, 1908.	Decided April 20, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

The facts are are stated in the opinion.

*Mr. James L. Norris* and *Mr. James L. Norris, Jr.,* for the appellant.

*Mr. Webster S. Ruckman* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents denying an application for a patent, having the following claims:

"1. The herein-described composition of matter consisting of insoluble casein and formaldehyde.

"2. As a new manufacture, a material consisting of insoluble nonabsorbent casein and characterized by hardness and tenacity.

"3. Solid, nonabsorbent casein.

"4. Solid casein, capable of resisting the action of water.

"5. Solid casein, characterized by toughness and elasticity.

"6. Solid, nonabsorbent casein, characterized by toughness and elasticity.

"7. Solid, nonabsorbent casein of substantially uniform density, characterized by toughness and elasticity.

"8. As a new manufacture, plates, boards, or blocks of solid

casein, characterized by toughness and to some extent by flexibility and resilience.

"9. As a new manufacture, waterproof or nonabsorbent plates, boards, or blocks of solid casein, characterized by toughness and to some extent by flexibility and resilience.

"10. As a new manufacture, hardened, solid, hydrated casein, characterized by toughness, resilience, and substantially uniform density, and the particles of which have been compacted by a shrinking together of the mass in drying.

"11. As a new manufacture, an article made of some known substance coated with a material consisting of insoluble casein and characterized by hardness, tenacity, and resistance to water.

"12. As a new manufacture, an article made of some known substance impregnated with a material consisting of insoluble casein and characterized by hardness, tenacity, and resistance to water."

The record shows that these applicants, Adolph Spitteler and Wilhelm Krische, filed an application October 20, 1897, which contained claims for the process of manufacturing water-resisting products from casein, and also the product of said process. The Primary Examiner held that, as there were separate inventions, a patent could not issue for both under the rules of the office; and that the applicants must limit their claims to one or the other of the inventions. They complied with this rule by limiting their claims to the process, and a patent was issued to them, therefore on April 3, 1900. On April 2, 1901, they filed the present application for patent for the said product claiming the same as a division of the original application. It also appears that the applicants had applied for a British patent while the original application was pending, and obtained the same on February 15, 1898, which covered both the process and the product of that application.

The divisional application having been allowed, an interference was declared between them and one William Hall on an application filed May 13, 1899. The Examiner of Interferences, and, in turn, the Examiners-in-Chief, awarded priority to Spitteler and Krische. On appeal to the Commissioner, he re-

fused to decide the question of priority, and dissolved the interference. The reason assigned was that, as the British patent to Spitteler and Krische had been issued and published more than two years before the date of their second application, it was a bar to the issue of patent to them thereon under the provisions of Rev. Stat. sec. 4886, U. S. Comp. Stat. 1901, p. 3382.

On return of the application to the Primary Examiner, it was denied by him, and his denial was affirmed on appeal to the Examiners-in-Chief. Both of these tribunals held that the question of applicants' right to a patent had been settled by the Commissioner's decision in the interference. On appeal therefrom, the present Commissioner adhered to the opinion of his predecessor, and affirmed the decision denying the patent. From that decision this appeal has been prosecuted.

The contention of the applicants was that the present application must be regarded as a division of the original application, and hence as a continuation of the same because it had been filed within a year from the last action of the office on said original application, namely, the issue of the patent thereon.

In denying that contention, the Commissioner relied on his former decision in the case of *Re Wagner*, on June 26, 1902. In that decision it was said: "The present application is a division of an application filed June 30, 1899, nearly a year after the grant of patent for the apparatus. Under these circumstances, it must be held that the present application cannot be considered as a division of the application which resulted in the patent of July 12, 1898, since there is no continuity between them. After this patent was issued there was a period of nearly one year in which, so far as the records of this office show, no effort was made by the applicant to secure a patent on the process. * * * It is evident that, if there is a period between the two applications during which neither one of them could, under any circumstances, be considered by the office, there is such a break in the continuity of the two that one cannot be a division of the other." The question has never been decided by this court. Although *Re Wagner* was appealed to this

court, its decision turned upon another point. *Re Wagner,* 22 App. D. C. 267.

This court has held in other cases that, where an original application disclosing two inventions that have been declared separate and distinct is pending in the office, a divisional application is to be regarded as a continuation of the first, so as to give the applicant the benefit of the filing date of the same. *Duryea* v. *Rice,* 28 App. D. C. 423, 425, and cases cited. See also *Lotz* v. *Kenney, ante,* 205. Had the applicants filed their second application as a division of the first, before the issue of the patent thereon, they would have brought themselves within the rule established by the foregoing decisions.

But, having amended that application so as to conform to the ruling of the Examiner, it was merged in the patent issued thereon. After that there was no application pending in the office as a foundation for division. The proceeding having been closed by the issue of the patent, there was nothing to be continued. The rule which permits a divisional application to relate back to the filing date of the original, which also discloses its subject-matter, as long as it remains open in the Patent Office, is a very liberal one that sometimes works hardship upon intermediate inventors, and it ought not to be extended to cases not clearly within it.

The applicants further contend that they are entitled to relate back to the date of the original application by virtue of the provisions of sec. 4894, Rev. Stat. U. S. Comp. Stat. 1901, p. 3384. That section provides that "all applications for patents shall be completed and prepared for examination within one year after the filing of the application, and, in default thereof, or upon failure of the applicant to prosecute the same within one year after any action therein of which notice shall have been given to the applicant, they shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable."

It is argued that the issue of the patent on the original application was "action therein," as contemplated by this section, and that the divisional application was a prosecution of the

same within one year thereafter. We do not think that the conditions presented by this case are within the contemplation of the section. It necessarily occurs that applicants for patents meet often with objections before their applications are properly prepared for allowance, which call for changes and amendments to obviate the same. In all such cases the statute gives the applicant one year after notice within which to continue the prosecution of his application. When the application has been allowed and the applicant fails to pay the patent fee within six months after notice, his case comes under the provisions of sec. 4887, Rev. Stat., U. S. Comp. Stat. 1901, p. 3382, which fixes the time within, and the conditions upon, which he may renew his application. *Cain* v. *Park,* 14 App. D. C. 42, 46.

On the other hand, when the applicant pays his fee and receives his patent, the purpose of his application is accomplished; its prosecution has come to an end. The final act of issuing the patent is not an action in the case, as contemplated in sec. 4894, calling for, or authorizing, further prosecution of the application, but is the final evidence of the successful termination of the prosecution. For the same reason that there was no longer a pending application for division, there was none for prosecution.

The Commissioner was right in treating the present application as an original one, and subjecting it to the same rule that would apply in the case of any other applicant of the same date.

The decision will be affirmed, and this decision certified to the Commissioner of Patents as required by law. It is so ordered.                                      *Affirmed.*